Brad Bannist and Andres Lopez In June of 2015, the juvenile court from Mecklenburg County, North Carolina took jurisdiction over Felipe then used that custody order to apply for a benefit under Immigration and Nationality Act called Special Immigrant Juvenile Status, a specific status that provides a path of residency for children who have been abused, abandoned, or neglected and find themselves in the United States, and among other requirements, have a custody order from a juvenile court. The agency rejected that custody order. Isn't that what their job is, not to reject it, but to consider an order? Don't they have the express statutory authority to review an order to see if it complies with the statute? And isn't what they were doing exactly what the statute calls for in this case? Your Honor, I think the antecedent question is how the agency interprets custody under the statute. And that's a question of statutory interpretation. And we challenge their interpretation of that statute. And then there's a separate challenge to the application of that rule. I mean, in the AAO decision, they decide that the application, the petition, is insufficient for a number of reasons. I mean, they talk about no finality. They talk about the order actually defers custody. There's a number of reasons that they do that. And I guess my point is, isn't that what the statute was in place to do, to give them the ability to see whether an order and the evidence presented was enough to satisfy the statute? I think the statute requires them to see if there's a custody order. Well, it's not just a custody order. It's all the elements of there. In Prong 3, they have to consent. There's an order that there must be a determination about whether reunification is viable. There's a requirement that there must be a determination that it's not in the best interest to return. And the agency said an emergency order that just holds the status quo in place for a few weeks wasn't a determination. I know you disagree with that, but why is that not exactly what they're empowered to do under the statute? Your Honor, I agree that the agency is empowered to determine whether Felipe's application meets the eligibility criteria under the statute. And the agency also engages in interpretations of that statute. And I think the dispute here is whether they are allowed to interpret custody under the statute to eliminate certain custody arrangements that have a temporary nature or are not final. And I do think the AAO decision here is restrained, in fact. They make no decision on the consent prong. They make no decision on – They use the consent prong at the beginning. Is it what they're doing? Is that exercising their consent function? I mean, that's a pretty strict reading. At the outset of their opinion, they say they're consenting. They articulate that obligation, and then they go about to evaluate the order. Your Honor, I would answer that question two ways. One, this decision is subject to the chain of doctrine. The agency is stuck with this rationale that is in the AAO. This is not a district court decision where if there's an alternative basis in the record below, this court can affirm. So that's the first point. The second point is a point to a case out of this course from just last year where it was a nearly identical case, but that opinion dealt with the consent provision. In the decision in that case, Fernandez-Reyes, the court said it didn't need to reach the question presented here because the agency action, the final agency action in that case made a separate finding. It said this would not be entitled to consent. That's absent here. Counsel? Sorry, over here. It's impossible to figure out where we are. Thank you. I want to make sure I understand that point, so that if we were to agree with you, the remedy you're asking for under the chain of reduction is to vacate and remand, where then the agency can consider prongs two and three, or however we want to describe them, to determine whether your client ultimately gets the benefit or not. That's the remedy that you're seeking. I think that's right, Your Honor. And I recognize, after reading the government supplemental brief, we may have a tough hill to climb when it comes to consent. But the question presented to this court is a narrow one. It's a question of statutory interpretation. The AEO made a decision, and I respectfully disagree with the panel's opinion on this point, based on its interpretation of place under the custody of. Who else did Congress charge with making that decision if it wasn't the AEO? Which decision, Your Honor? I'm sorry. I'm saying that the agency made the decision. It's a federal question as to whether something is a qualifying custody order or SIJ status. The agency made the decision. Wasn't that exactly what Congress charged it with doing? Yes, Your Honor. Isn't there some deference under the APA due to the agency's decision as to what is a qualifying custody order? No deference is due to the agency's interpretation of the statute here. Chevron doesn't apply because this is not a final agency action a carrier force has lost. And so Chevron is not in the question, or not in our deference is out, because this is not a regulatory interpretation. So this is a pure question of law that this court engages in all the time to know both. I would point this court to the most recent decision of the Supreme Court, Kaiser v. Wilkie. But there are many cases in which Chevron deference applies to questions of law and questions of statutory interpretation. Yes, Your Honor, there are. So to say that this is a question of statutory interpretation simply begs the question of whether some deference is due. And, Your Honor, we can answer that. First off, the agency doesn't argue it's entitled to any deference, and I think that's a wise concession. If this was a notice and comment rule that the agency has engaged the public, the public had commented, they had gone through that, and it was a rule that the agency purported would bind all regulated parties, and I was challenging that regulation, then Chevron should be involved. Under me, that's an interpretation of the statute that we need to go to the two-step Chevron dam. When you get one of these ex parte temporary custody orders in North Carolina, I don't think the government challenges the fact that the juvenile alien was in custody, I think in this case for a week, that that was a legitimate custody at the time. But am I correct that when you get the ex parte temporary order, there's no notice in this case to the parents, no opportunity to be heard, there's no evidence taken from any of those parties that that would be at a later hearing? Your Honor, the mechanism that the Mecklenburg County Juvenile Court used is actually a mechanism that is not unique to North Carolina. It's a part of the Uniform Child Custody Jurisdiction Enforcement Act that 49 states, District of Columbia... I don't think there's any question about that. But here in this case, there's custody for a week before the juvenile alien reaches the age majority. That's right, Your Honor. When the juvenile court in North Carolina lose custody. So there would never be any hearing with respect to the parents or any determination of factual evidence on the questions that would be relevant for immigration purposes. I agree that Felipe aged out before there would be a subsequent hearing. I disagree that the court lacked jurisdiction under this particular mechanism to make those necessary findings. And I would point you to the language... Well, they may have had jurisdiction, but there's no notice to the parents. There's no opportunity for them to be heard. And here there's only custody for a week. It's almost as if you didn't want there to be a permanent custody period. Well, Your Honor, I would point to page 116 of the record where the complaint in this case was actually filed six months earlier. Right, but you didn't get the order to a week before. That's right, Your Honor. The dockets in North Carolina, Mecklenburg County, and Cedar Fork moved slow. When did you move? For the motion? Uh-huh. It was in June. That's right, Your Honor. It was very close to his birthday. That's correct. The motion was in June, not when you filed the complaint. That's right. But on the matter of slow dockets, you actually filed it very close to his 18th birthday. Your Honor, I would suggest that when the dockets didn't move quick enough, this was the mechanism we had to use to get custody. And I'll just point out that under this particular provision, the government's supplemental brief discusses Section 50A.204, parenthetical A. That's the statute that the juvenile court used jurisdiction under. And they cite that, and they over and over and over and over again. But they failed to cite this following subsections below. I just want to point out what those actually say, right? Subsection A, the court can take this emergency jurisdiction if the child is present in the state and the child has been abandoned. There's no need for a finding of emergency. It's a disjunctive jurisdictional test. If the child is abandoned, they can use this method. Your Honor, I think what I'm trying to get at is what evidentiary basis there is here when you have this very short time frame, which apparently is not unique because in the Hernandez-Reyes case, I think it was you who did the same thing four days before the alien turned 18. Are these just matters of coincidence? Your Honor, the Hernandez-Reyes case and the Felipe Perez-Perez case did come to the same immigration attorney. We brought them together because they presented what we perceive as the same issue, that the agency is unlawfully interpreting the term custody to limit what the state can do. Let me ask you this. The agency here is seeming to require something more than a TRO holding the status quo. They talked about the temporary nature and they were looking for some finality about custody, the order, maybe a final order. And they looked to the North Carolina law on that and the emergency order, they didn't construe to be a custody order because it was just basically a holding order, a TRO type of thing until the court could make the determination. And when you look at the North Carolina law, you have this provision. This is in 50A-205. It says, before a child custody determination is made under this article, notice an opportunity to be heard in accordance with the standards of 50A-108 must be given. And it seems to me the agency could read this to mean that this was not a child custody determination because North Carolina said it is not one. It's just a TRO. Now, why isn't that in the reasonable realm of decision making by the agency? Because it's wrong. Is the statute of North Carolina wrong? It says, before a child custody determination is made, opportunity and notice to be heard must be given. Your Honor, North Carolina, much like all the states that follow the CCC, there is a spectrum of custody orders that can be entered. The provision just before that, 204B, says, if a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under the UCCJDA, a child custody determination made under this section becomes a final determination if it's so provided and this state becomes the home state. There are other provisions that allow for Mecklenburg County- I know, see, you're arguing the statute the way you want to argue the statute, but my whole question is focused more on the agency's position. And here we have a process where a few days before the child reaches the majority, goes and gets an emergency order without notice to the parents, without opportunity to respond, names the parents as the defendants, and the court issues this TRO and schedules a hearing to make the determination. And then the statute says, before such a determination is made, a notice and opportunity to be heard must be given. So the agency says, we can screw the TRO, not as a custody order, but as a holding order. It's too temporary. They use the word temporary. And we're looking for something that qualifies as a custody order with notice and opportunity to the parents to be heard. And I don't see how, whether you agree or not, you may try to make a different determination or it may be ambiguous, but it seems to me the agency is the one making this determination under the statute. And I don't see why that's not within the reasonable range of instruction in view of a North Carolina law. First thing, the characterization of a restraining order, a temporary protection order, is completely a creation of litigation. Well, it's TRO. The judge gives notice. I don't call it a TRO. That's the first time I've come up in here. Well, isn't a TRO temporary? It's called a temporary emergency temporary custody order. On the face of it, it's called an order granting ex parte temporary custody. It's ex parte, right? Ex parte temporary custody. And the court found it had jurisdiction over Felipe. He's dependent upon the court. It's his best interest for temporary and permanent custody to be awarded to the plaintiff and hereby granted emergency temporary custody and control of the minor child to Mateo, his brother. Answering Judge Niemeyer's question, I'm trying to understand your point. It's your point that the subsection reads as he says it does, but the same act, uniform act, makes it clear that this is a custody when you're dealing with other circumstances, particularly with other states. That's the whole uniform nature of it. The other point I want to ask you about is we're dealing with temporary custody, and this custody order is in effect until he becomes the agent majority. At that point, it doesn't matter. You're not going to get a permanent one or anything else. In between, what would a permanent order have done more than what this one has done? Nothing, Your Honor. In other words, it doesn't matter whether he had a permanent custody order for the week or not. The question is during that period of his juvenile existence, he is in custody, and under North Carolina law, at least for the state of Virginia and everybody else that's involved in it, is custody. That's right, Your Honor, and I think my answer to Judge Niemeyer's question is there are— I'm surprised it's your answer because it seems to me if you name the parents as defendants and the parents were to come into court and say, we were loving parents, we raised him, we educated him, and he ran away as an act of rebellion, you might have a totally different result. In other words, taking the custody away from the parents in order to have a custody order, you have to have some process, and regardless of whether you agree on that, the question is it sounds to me that's reasonable enough under the North Carolina statute to justify the agency drawing a line between a temporary ex parte order and a custody order in which the parents are at least notified or given the chance to respond. And that's exactly what they said. They said the order was temporary and therefore not a permanent finding. They didn't say permanent custody, a permanent finding. So they're looking for an order that is more substantive than an ex parte order, and it sounds to me that is a rational interpretation of the statute. Well, Your Honor, to determine whether it's a rational interpretation of the statute, we have to look and see what Congress intended. This is an interpretation that touches on important— Counsel, sorry, I want to—I think I know where you're going, and I want to follow up on this because we've been talking about, you know, is this a sufficiently final determination? North Carolina law talks about custody determination. Does it matter that the statute actually doesn't hinge on there being a determination of custody? We're just looking for a placement. The child has to be placed under the custody of the person because temporary placements are, at least as I understand it, incredibly common in this line of work. And the statute's not talking about a determination or an award. It just says he has to be placed under the custody of his brother. I think that's exactly right, Judge Harris, and I think you're going to the statute that we need to be looking at. What did Congress intend custody or placement of custody to mean? But it says more than that. Judge Harris is correct about the custody issue as far as that goes, but it also talks about an additional determination of reunification and whether it's viable or not. And the agency, to follow up on Judge Niemeyer, looked at this order and says an order that is not— where there's not notice given doesn't rise to a determination. That's what they said. Now, again, you obviously have a different view. The order says that reunification with biological parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law. That's what the order says, signed by the district judge in Charlotte. That's exactly right. And to answer your question, Your Honor, I guess we'll disagree on that. We're supposed to accept domestic relations rulings of the state courts. That's right, Your Honor. Neither this court nor the agency— That's fundamental. —sits as an appellate review of this particular— Was any effort made to contact the parents? Yes, Your Honor. I think we provided a letter after argument. Admittedly, it's not on the record. We're not the appellate court for the district court of Mecklenburg County. This court is not in the district court in the federal court. The Western District of North Carolina was not a proper appellate court to review the rulings of the district court of Mecklenburg County. That would have to go, if there had been a notice of appeal filed, as I understand it, to the North Carolina Court of Appeals. That's correct, Your Honor. But is anyone suggesting that— We just accept their orders, their rulings. Is anyone suggesting the North Carolina court, in the temporary ex parte order, did anything wrong? I don't think that's the issue. I think it's the issue as to whether an order that comes ex parte without notice is a sufficient determination. And we're reviewing it. We're reviewing it to see if it complies with the federal statute, which is what the agency is empowered to do. Things like me, under your view, there's not a whole lot for that agency to do with their time. I mean, you have a pretty narrow reading of what this agency can do, it seems to me. The agency said, in this case—this is on page 27—its decision. In this case, the court order submitted is expressly temporary in nature and does not make a finding that reunification with one or both parents is permanently not viable. And that's what they said. That's the ruling. And it expressly made a ruling that it was viable. It was not viable. It expressly said it was not viable. They said it was temporary. There's nothing in the statute about whether it's temporary or permanent. They write temporary into this. We're in conflict with the Fifth Circuit on this because the Fifth Circuit seemed to indicate that the state court makes an initial custody order, and then it's up to the—then it's a federal question as to whether the state custody order constitutes a qualifying order. And the Fifth Circuit took that in a two-step analysis. And it seems to me that your position is, oh, no, the state court order is virtually binding, and we have no—that the agency really has no role in reviewing the nature of that state court order. The Fifth Circuit has said, yes, that's a federal question. And it's a two-step analysis here. And the other question I have is, what is to prevent anybody from taking charge of a juvenile for a certain number of months or years, and then with the 18th birthday of the minor fast approaching, filing an emergency order for an ex parte decree, and then the emergency order is issued in contemplation of a later hearing, but the 18th birthday intervenes between the emergency order and the later hearing, and the court has lost, at that point, jurisdiction. And so the ex parte order, which is issued with really shortchanging the rights of parents and also not even referencing basic provisions of North Carolina law with the ex parte order, is thereby transformed into a qualifying order for purposes of the North Carolina statute. And what we're saying is, or what you're urging that we say is, here, we're giving you a roadmap to go and get an ex parte order and have that binding as a matter of federal law on SIJ status. And it seems to me that has a lot of problems in terms of the parents' rights, but also in terms of the agency's role, and also in terms of the ability of people to manipulate the immigration statutes in a way that transgresses Congress's intent. I mean, there are just a number of problems with your position from, looked at from various angles. But Congress uses the word temporary and permanent in their statute, and OJO case involved an option to support the side. The whole thing was, there has to be some unmistakably clear language by Congress to limit the term or the application of the domestic relations concept. Is that true? That's accurate, Your Honor, and it actually goes one step further in the exact same eligibility criteria. Congress does identify a type of state custody order that won't fly for SIJ status. Even if Mecklenburg County tried to do a custody order of a foreign national child that was in the care and custody of Health and Human Services, that is insufficient. So Congress knew how to limit and provide that clear intent to say, this type of custody order won't fly, and they didn't do so here. And to answer your question, Judge Wilkinson, the first question, I believe you're talking about Siser case, Budakowski. I don't think the court did anything wrong there. The question presented there was, was the court that issued the custody order in that case a juvenile court? The statute requires it to be a juvenile court, and they found that the court that issued that custody order was not a juvenile court under Texas law. I don't think there's anything wrong with that. I don't think my position contravenes that. What I'm suggesting is that— But in a different context, we would be hard-pressed to find something as one-sided and temporary as this. We would be hard-pressed to ascribe to it as determinative of anything. If we were on direct appeal on a variety of cases, and we had what was essentially an ex parte TRO, we wouldn't regard it as determinative of anything. In fact, you have to have a preliminary injunction or something to even have an appealable order. And that's because these kinds of temporary orders are not accorded finality of fact. But that's what you want to do. Your Honor, to— No foreign national child here who is out of status wants to delay acquiring status. SIJ status is a significant benefit Congress provides to a very unique subset of vulnerable individuals. This is Congress's intent. But you say that, but you could have filed a motion right when this case was filed. If there was a pending emergency, or if you wanted to use abandonment, you could have done that right when the case was filed. He had been with the brother for over a year. And instead, you waited until six months later into June. So, on the one hand, you're saying the juvenile wants to get this done as soon as possible, but you didn't do it as soon as possible. Your Honor, one practical point. I'm never one to try to tell a judge or a court to make a decision faster. That's definitely my first point. But my second point is under our interpretation, or I should say under Congress's intent for the word custody, it doesn't matter. Congress said custody placement. Custody is a term that derives from state and national relations. Well, I think the question is, are you gaming the system in trying to get this temporary order and make it fit the statute without having it been tested? And, of course, the agency said that such an order doesn't qualify, and they also referred to the Traffic Victim Protection Reauthorization Act of 2008, which basically said such a thing, that the temporary order doesn't appoint a final guardian. They used that analogy to help them establish what a qualifying order is. But here, the qualifying order was a temporary protection of the child pending a determination of custody. And that's the way they construed it, and I don't see that that's unreasonable. Now, you can argue otherwise. We're not on appeal from the North Carolina decision. What we are is we're reviewing an agency that carefully reviewed these factors and concluded that while we have this policy to wait until the last minute on a unilateral affidavit of the child and conclude that that is custody without letting the parents know and giving them notice, that that's not a custody order. It's just a temporary arrangement to see whether the child is right. Two points. Forty-nine states, the District of Columbia, agree that that is a custody order, first off, whether the parents are notified or not. Look, we're looking at federal law. We're looking at federal law. That's my second point. And we're looking at federal law, and we're looking at an agency determination. And they're determining whether an order, a state order, qualifies for the federal order that's defined in the statute. And they explain explicitly why they conclude this particular order doesn't qualify. And it seems to me the reasons they give are eminently reasonable. And for you to say that they're wrong on that, you're basically taking away their authority and expertise in this area. Your Honor, I believe that as a matter of administrative law, if Congress provides an unambiguous term, Congress takes away the agency's ability to interpret it. There's no interpretive room. That's Chevron. Chevron's step one. It's unambiguous. We stop there. And any interpretation beyond that by the agency, Congress has filled that space. What does the consent requirement, though, of subsection 3 mean? I mean, it seems to me that perhaps you have to concede that subsection 3 gives the Secretary of Homeland Security the right to withhold consent, but that the AAO didn't rely on that. It relied solely on subsection 1. And not a bid the field office director who made the original decision? The consent provision is simply not at issue here. We are stuck at the confines of the four corners of the agency's action period. That's the nature of the administrative procedure act. And we can't add in grounds. So that gets back to Judge Richardson's opening question. If we agree with you that number 1 is insufficient because there was a valid custody order, do you get a remand to consider whether 2 and 3? Or do you just have a right on this order to get your relief in this court? Your Honor, I will answer the question the same way I did with Judge Richardson, but also an alternative. And that is, I think that's a fair remedy to say your interpretation of custody is too limited. You've created an ultraviolence eligibility requirement. We're remanding it to you. You can't apply that rule. Okay? So we get back to the custody order problem. We have to deal with the other problem. And you're still exposed to subsection 3. That's the nature of the petition work that we engage in. And you concede that? Well, my other answer is I do think, again, the agency's had its opportunity to make all of those other decisions. And it chose not to. Again, I point to the case that Judge Agee correctly points out that I lost last year in this very court, where the agency did add alternative grounds to, they said, the custody order. It was temporary. It was no good. That was an evidentiary issue. And the quantum of evidence that they were required to review is a different issue than you have in this case. But it seems like to me the bottom line of your position is that in terms of the agency's discretion, as long as you or anybody else gets a custody order under state law, it doesn't matter whether there's no notice, there's no evidence, it's only good for 12 hours before the juvenile detains the age majority. That's sufficient. The agency is bound. Yes, Your Honor. And I trust the state court, juvenile court judges to ferret out the fraudulent attempts from the genuine. They have a role in this. They're going to do it in this case when there's no evidence. Every ex parte custody order almost comes up. It's an emergency situation. You're relying on an affidavit. You don't have an evidentiary hearing. The juvenile force placed in the position where someone has come in and said, this child is in danger. They don't have any way of going behind that at that time because the time period is so crucial and it's so short. It just seems like in this case, you're trying to guarantee there'll never be any type of evidentiary hearing to determine whether that order was actually factually valid because the state court loses jurisdiction in a matter of days. So I respond in two ways. One, I have faith in the state juvenile court judges that are going to do their duty and look behind the orders before they sign. It's not a rubber stamp. Secondly, Congress took account. Look behind the orders without talking to the parents. I mean, this was a single affidavit written in complaining about from the child. And the question is, if you're fearful of the real facts, then you do exactly what you did. You wait four days before or six days before he becomes in his majority, rely on the custody order, which the state court did have to do, the TRO, on its own authority. But that doesn't satisfy the federal standard that there has to be some kind of substance, some kind of finality about the custody order, which is subject to cross-examination of counterfacts looking behind it. That's no looking behind it. If there was any authority for that, he might be right. But what you have to do is look at the state court order. We can't take judicial notice that the state court judges aren't going to do their job. We accept their orders. And go on. And the agency is supposed to. The statute says custody. Custody. Temporary custody is custody. Congress could change that if they want to, but they haven't. And that's why I think this is a straightforward question of statutory interpretation. And they relied on it. They said it's temporary in nature. And didn't find that reunification with the parents was viable. And they're wrong. That's what the agency did. Everything we've talked about here, it would have been nice if the agency had done this. It might have been justified. They didn't do that. They went right to the statute, looked at that word custody, and said it can't be temporary. And that's all that's before this court right now. We can make it whatever we want. We can go back and talk about the nature of that order. All of the facts we want to. That's not what the agency did here. That order, if you look at it, it just deals with the word custody. And we know right from the beginning, it's not Chevron deference. It's not oral. And it's not Skidmore. Then we're in the world of abuse of discretion. So it's a whole different ballgame. And I do think the case is as simple as that. I think that's right. I think this court, because it owes no deference at all. It's actually a de novo question of statutory interpretation. And we follow OJO. As Judge Floyd pointed out, it's a very nice analytical paradigm. Well, it's actually pretty different, isn't it? In OJO, there was a direct conflict. The agency said the effective date of an adoption was one thing. And the agency said the effective date of the adoption was another thing. They said two different things. And this court said that on that issue, you should defer to the state law on that. In this case, the agency didn't say that the state court did anything wrong. It just said the nature of the order, without notice being given and without an opportunity to be heard, wasn't a qualifying order. So OJO and this seem to be maybe in the same universe but pretty different. And I think my distinction would be that it's identical here for the antecedent question. Can the agency interpret an unambiguous term with a plain and ordinary meaning that is filled by state domestic relations law? That question was squarely presented in OJO, and it's squarely presented here, as Judge Flynn points out. The application of that rule, I think, Judge Bottlebaum, is where most of your questions come from. And if the rule is wrong, then we don't even get to the application, where we get the deferential APA standard. And I think that was a big point that the Senate pointed out in the panel opinion is that by skipping the antecedent question, we get into the APA's deferential standard. And that's inappropriate here because you don't apply the deferential standard when we have no Chevron deference, no our deference. And it's the agency just in an informal adjudication interpreting a plain and unambiguous statutory term. Thank you, Counsel. Thank you, Your Honor. May it please the Court, I'm Scott Stewart on behalf of the United States. In this case, the agency determined that Felipe Perez Perez submitted a state court order that did not satisfy the requirements of the federal SIJ statute. It therefore denied his petition for SIJ status. Both the district court and a panel of this court upheld that agency's decision. The en banc court should now do the same. The agency correctly assessed whether the state court order in this case satisfied the requirements of federal law and issued a well-supported determination based on that assessment. And its decision honors state law. Mr. Perez's argument is the contrary, Blackberry. I want to make sure to touch, Your Honor, on the ultra-various arguments, the arbitrary and capricious points, and hit and emphasize some points that have been emphasized here. The key thing I want to begin by emphasizing here is that on the antecedent question of how does the agency reasonably interpret what it's supposed to do here, I think the panel did well to recognize that it is indeed the province of the agency to look at what it gets and make sure the federal requirements have been satisfied. It doesn't have just a pass-through ministerial role. It has to actually look at what it's received, view it in the context of the state law it is dealing with, and determine, yay or nay, does this satisfy the requirements of federal law. That's a reasonable, well-supported rule. It did not, by doing that, as the panel correctly concluded, that the agency did not have ultra-various. That was a completely appropriate approach. And, again, the agency, when it's assessing the nature of the findings, what the state court did, what it was able to do under state law, it was doing that. As to the arbitrary and capricious question here, Your Honor, and I think a lot turns on this, and I know Judge Kaine, in his dissent, has emphasized at various points today the language of the state court's initial order, how we look at this. And the point I'd emphasize is North Carolina is clear about the limited nature of any findings that could be made under emergency jurisdiction here. It's very clear in I. First of all, as a preliminary matter, North Carolina courts do not simply accept a label or a characterization of a court's order made in these custody contexts. That's the Brewer case, the Topp case, Canellos, Lamont. You have cases where the North Carolina Court of Appeals is looking at orders that are labeled temporary, and it says, no, that's not a temporary order. That's a final order. You have cases where the state trial court, district court, says the order is permanent, and the North Carolina Court of Appeals says, no, it's not permanent. It left issues open, and so it's temporary. So, again, North Carolina law itself does not say that you merely look at the state's order and how it characterizes itself. You have to look at the legal context in which it's issued, what the state court has authority and jurisdiction to do. The agency cited to the Brody case out of North Carolina in which the Brody case says when the court exercises emergency jurisdiction, its order is, in the words they used, is a temporary protective order only. Exactly, Your Honor.  At page 860 of the Brody case, the court gives you that critical temporary protective orders only language, Your Honor. I know that supplementing that with what I just mentioned. I mean, it would be hardly arbitrary and capricious for the agency to rely on something like that. Correct, Your Honor. Particularly when you have cases like the Dunlap case, this is page 807 of that, where the court said, quote, North Carolina Court of Appeals, Your Honor, said, quote, an interlocutory order is one that does not determine the issues but directs some further proceeding preliminary to a final decree. So I gather your position is that a temporary custody order could never make sufficiently permanent findings to qualify here. Is that right? I think under North Carolina law, I think the court cannot make the custody determination or the required viability of reunification determination that federal law requires. In the context of North Carolina law, I want to reserve it to what other states might say about their temporary jurisdiction. So the United States Code, the provision that we're talking about here, doesn't say anything. It talks about custody, right? It does talk about – It doesn't say temporary custody is disqualified. I'd say 2.2 – that this temporary custody didn't work. But you just told me no temporary custody determination would qualify in your view. I think that's the nature of the jurisdiction that a court exercising temporary emergency jurisdiction has, Your Honor. It's not a question of temporariness versus permanent. It's really a question of an interim protective order, a placeholding status, quote, preserving order, versus an order based on an adequate factual record, one with the opportunity for notice and contestation. The court is then in a jurisdictional position and an evidentiary position. That wasn't your argument before the district court and the agents for all the panel here. Your argument was essentially that this term, custody, does not encompass a temporary order. It's the statute itself. You can look around at the statute. You don't have to go and look at any other thing. If you start out with that legal determination, that's what you said, that the term custody under this statute does not encompass a temporary order. Is that not your position? That's not our position, Your Honor. That was what the decision said of the agency. Your Honor, that's what the decision said of the agency at page 27. In this case, the court order submitted is expressly temporary in nature and does not make a finding that reunification with one or both parents is permanently not viable. That's what was said. You're bound by what the agency says. That's the field director's decision. The decision under review here, the AO decision, and this is at page 22 of that decision, Your Honor, page 22 of the JA, when the court says, and this is a critical line near the bottom of the page, quote, only in the hearing scheduled for July 22, 2015, does the juvenile court determine the viability of the petitioner's reunification with one or both parents and the resulting custody issues. It's that critical viability of reunification determination that the court needed to be able to make and which it could not make. That's the basis for the agency decision in this case, and that lack of finding was a correct basis for it to not exist. Counsel, on that issue, I mean, from reviewing the AO decision, it looks to me, and maybe I was wrong about this, but it looks like this decision was a decision about this particular order. It was not a didn't make a sweeping rule that anything applies across the board. This was a decision by the agency about this order not complying. Is that correct? This is correct, Your Honor, and I think that's a good point because, you know, if there are That was exactly the opposite of your answer to me like four minutes ago. Your Honor, there are, you know, if I can be a little more precise, I mean, I think, again, in a context where a court's exercising only temporary jurisdiction and it's not able to make the relevant fact findings, you know, if nothing else happens that would turn that into a permanent order. Well, that's what I asked you. Is there ever a situation where you can have temporary custody and make sufficiently permanent findings to satisfy you off? And you said no. I think with the court, and this is the one that Judge Quattlebaum emphasized, I mean, there could be a circumstance, you know, where something changes, where, you know, if a custody is permanent, you know, just a temporary custody is permanent. What about the scenario where you provide, as North Carolina law does, notice and opportunity, and it's not ex parte, but it's a, you know, contested issue, and the court, after hearing those, makes the finding, but for whatever reason, says it's temporary instead of permanent. Like the label of it being temporary is not what matters. It seems to me what matters under North Carolina law, under 50A205, is whether there was notice and opportunity so that determinations could be made. So I'm with Judge Motz. I think you've given two different answers. You've got to pick one of them. I think there's a risk of getting caught up in the labels here, so I did not mean to do that. So you would agree in that scenario that my hypothetical, which is not our case, I get all that, but that hypothetical preorder may well satisfy subsection one. It's the failure to provide notice and opportunity as required under North Carolina law. Or you don't agree. I'm not sure. I'm curious which position you take, because I do think he's sort of hedging there a little bit. I think it's possible, Your Honor. Your Honor, it's tricky because of what happens when you have a temporary under North Carolina law where if you have a situation where a court has exercised only temporary jurisdiction and sets a later hearing and the hearing doesn't happen or the findings are not made. It sounds like under your hypothetical, though. I'm hypothesizing that there was notice, opportunity, hearing, findings. But at the end of all of that, and sometimes judges do say, listen, I've heard all this. I made these findings, but I'm doing it temporarily. And I want you to come back in six months to see how everybody's getting along. I'm not trying to understand North Carolina procedure, but I'm thinking if that happened under North Carolina law for whatever reason, that could be a temporary order that may well satisfy. But you've attached in your paper temporary orders to insufficiently permanent findings. And that's what my question was to you. And you said you're right. Temporary order can never issue sufficiently permanent findings. I think I was focusing on this exact context. I'm sorry that I missed it. I thought your answer was that you didn't need to consider hypotheticals that were not before the court, but you weren't taking a broad view that a temporary order could never under any circumstances be a qualifying order. You were just sticking to the facts, as Judge Quattlebaum points out. You were just sticking to the facts in this particular case. I think that's right, Your Honor. And the other thing about it is this is a court, and this is a court that rightly prides itself on a degree of due process. And, you know, notice of hearing, all of the ingredients of due process. There were none of the ingredients of due process here. It was simply resolved on the basis of an affidavit without notice to others who might be vitally affected parties. And it just seems to me at odds with our historic commitment to some sort of due process to put out a stamp of approval on the sort of rough proceeding, temporary proceeding, ex parte proceeding that took place here. This makes a mockery of due process. Well, and to make clear on the sticky part, the government's position has been clear. I'm looking at it right now. Congress was clear. Temporary custody is not considered legal custody for purposes of eligibility. And you've got that in the brief report of this report and the brief here. And your position has been an agency's determination is focused on the meaning of the word custody. All of the other facts we want to add into it is something justifiably you could deal with the APA, but you didn't do. Your Honor, I need you to point me to where in the JA and the AAO's position. 168 on JA and your brief. When you're considering that. Okay, page 25 of the brief. Again, I don't see that as determining, interpreting the word custody, Your Honor. This is why I try to emphasize, if the word is temporary and permanent, there is a risk of some distraction with them because really it's a matter of... Okay, on that same order, we have the USCIS's opinion. The new court order submitted does not overcome the fact that the custody order submitted is expressly temporary in nature and therefore does not make the finding that the unification with one or both parents is permanently not viable. That sounds like your original answer to me. So that's what the agency said. We're reviewing what the agency said. Under Chevron, we can only affirm on the basis of what the agency did. But, Your Honor, you have to account for what the word temporary means in the context in which it is used. And that talks about the limited jurisdiction that is quite clear under North Carolina law. It's very limited. Even if the court were to say this finding, it cannot make that finding because under Dunlop and North Carolina precedent, these temporary custody orders do not determine the issue. Okay, so now we're back to the position that under North Carolina law, a temporary custody order never satisfies you. You can never make the correct finding. But in response to my question from my colleague, Judge Richardson, thank you very much. I have trouble with you young people. I am memorable. I am memorable, if nothing else. You seem to say, oh, yes, there is room under North Carolina law. So, you know, let's just get a consistent. Judge Wilkinson, the Governor has never argued that the North Carolina procedures, North Carolina legal processes for these types of proceedings, the district courts or the juvenile courts in North Carolina are unconstitutional under any due process clause. I mean, not for the correct purposes. You've never argued that anywhere, have you? That's not. Do you argue that today? Do you adopt Judge Wilkinson's position that it's unconstitutional under the due process clause? I didn't take that to be Judge Wilkinson's position, Judge King, and we're not arguing that these are unconstitutional. We're saying that these are limited proceedings that cannot, that in this circumstance did not make the finding need. We're saying that this is a rump proceeding, that whether you determine rights constitutionally or whether you determine rights simply according to any kind of normal process, that certain ingredients are present, whether constitutional or not. And among those ingredients are notice, a chance to have some of the interested parties at least have a hearing, people have a chance where their interest may be at stake, at least to make their interest known. This bears no, I mean, this bears no resemblance to any kind of proceeding that we would credit under normal circumstances in our court. And we have a great tradition of fairness and procedure and process in hearings that determine people's rights. And none of those were present here. And you can look at it as a matter of due process. You can look at it as a matter of what just basic fairness under state law or federal law or any kind of law. People have a right to notice and they have a right to be heard. And they have a right not to have their rights determined by trial, by affidavit. Right. I think, Your Honor, the two points I would emphasize in consonance with what Your Honor just laid out is, one is that under North Carolina, you quite clearly contemplate the sort of notice you're discussing, before any sort of actual viability of reunification, those real determinations are made. And under federal law, this SIJ status is a major, major decision. I mean, it cuts off the parent's ability to benefit from the child's application. I think that A.G. or a fellow member of the panel mentioned, and these are pretty disparaging assertions made about one's parent. They're not lightly made. The important thing is that you make that argument as well as saying now, did you make that argument to the agency or to the parent below? Your Honor, we're not making a due process challenge. You made this argument before, is my question. Did you make it to the agency? Whatever you characterize. And is it reflected in the policy manual when you're answering this question? Because the policy manual is not talking about these kind of procedural concerns at all. It just says the temporary unavailability of a child's parent does not meet the eligibility requirement that family reunification is not viable. I mean, it's about the substance. If it's temporary, it's not what we're talking about. I mean, it's about the factual basis, Your Honor. That's not what the policy manual says. So why don't you show me where the policy manual says we have a concern about the procedural protections that are going on in the temporary setting. And then answer Judge Wynn's question, yes or no. Did you make this argument before? I mean, we can read. I'm over here. Sorry, Your Honor. To the first point, Judge Thacker, what I would emphasize is we did not make a due process argument. No, whatever you want to call it. Label it any way you want to. Did you come out with this argument before? I will say what we argued, and I will do the best I can to be fair and respond to the question, Judge Moss. What we have said is that you need certain findings to satisfy the requirements of federal law. What I take Judge Wilkinson's point to be getting at is that when you're producing some findings, you need to make sure that they are understanding the embedding as they are hearing. My point is, look at what we're actually doing here. We are putting a stamp of approval on this. We are running the risk of separating children from parents without basic procedural protections of notice, of hearing, and the other things that we normally identify with the accoutrements of process. How can we separate families and children from parents if process is meager and slim and unedifying as this? You can put whatever label up you want or address it what you want, but that was your concern below. That precisely was your concern below, that once you start riding this train, all kinds of family decisions based on family rights are going to be made in a vacuum and without knowledge of the kind we would normally credit as necessary before a court weighs in. Judge Wilkinson says that was your concern below, but I want you to tell us, was that your procedural concern? Did you bring that procedural concern to the agency below? Judge Wilkinson said you did, but I can't find it. I don't have the citation right here to give you, Your Honor, again. What is your representation? You're saying you brought up that procedural concern to the agency below. You did not focus just on the meaning of the word custody in the statute and says that word does not encompass. You brought up all these procedural concerns. Is that what you're saying? I mean, either you did or you didn't. Judge Wilkinson says you did. I'm trying to figure out what you did. Do you agree you did? Your Honor, I honestly can't. Why don't you just say no? I can't follow. You don't want us to do the appendix. I did. No, did you? Your Honor, what I'm defending here is the agency's decision at JA-22 when it says, only in this later hearing could a reunification with viability of reunification determination be made. But you can go even further because you can rely on the fact that North Carolina has said that its emergency orders, that courts exercising emergency orders are not custody orders. The court said that when a court invokes emergency jurisdiction, any orders entered shall be temporary protective orders only. Now, that's what the agency relied on regardless of the argument you made. And we're reviewing the capriciousness of the agency. And it seems to me if the agency, if the North Carolina says these are just protective orders only and not custody orders, they can't be custody orders. That's the point that Judge Wilkinson said. And that's what the statute says in North Carolina. It can't be a custody determination without some process. And so it seems to me regardless of what you argue below, you have an agency that relied on North Carolina's characterization that this was not a custody order, but a temporary protective order only. And I don't know whether you need to go much further than that. I think that's right, Your Honor. I would agree with that. Do you understand that the statute requires a custody order or a custody determination even though it says custody placement? Because that's what I'm not getting. I'm not sure that the placement issue, that issue was, like, the placement question. Why does the statute require that there be a custody determination when what it says is that the child has to be placed in custody? I mean, it doesn't say order. It doesn't say determination. It doesn't say award. So I'm not understanding the relevance of the fact that there was not. I mean, even if there were, there would be a very serious argument about whether, as Congress has said in other contexts, a determination includes a temporary determination. But here it doesn't even say that. It just says place them under the custody. Right. I don't think a lot of, I don't think much has been addressed on placement in this case here. I know. What I can say here, Your Honor, is that suppose that a placement would suffice. That still wouldn't address. I think a placement would suffice because that's what the statute says. So, yes, let's assume that. Counsel, in follow-up to that, isn't it relevant what in subsection 1 comes after the word and? There is an issue with reunification in addition to whether the custody placement is there or not. I wasn't there, obviously, at the time of the argument. But both the agency and the AAO talk about the nature of the decision being only short-lived and being unable to reach the determinations that the agency felt were needed to qualify under the SIG statute. Correct, Your Honor. And I was going to say that even if the placement requirements were met or were not an issue, you'd still have the lack of a finding of viability because if the agency said it did, the court would not inclinate that finding. That was something that would have happened after a later period. What about the fact that the court made that finding? Page 129, in its order, the court determines, this court determines that, subparagraph 2, reunification with the biological parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law. The court made that finding. Signed by the judge, June 29, 2015. Honorable District Court Judge presiding. And, Your Honor. You haven't claimed that this is a sham court, have you? I have not claimed it's a sham court. You don't claim it today, do you? No, Your Honor. And that finding was made by the court, June 29, 2015. Your Honor, as I touched upon earlier. And you came up here and argued, wasn't you? Your Honor, I was saying any such statement before the court made such a finding was legally inactive on the viability of reunification question because under clear North Carolina state law, the court could not have determined that issue. You're saying you all don't, you all, that your agency, you do not recognize the proposition that the state courts in this country handle domestic relations facts. That's not what I'm saying, Your Honor, because Brewer from the North Carolina Court of Appeals at page 546, Lamond, Cox, Canellos, other cases, recognize that it's not purely the label or the descriptor that the district court puts on it. It has to involve the substance of what the district court did and had jurisdiction to do. So even if it says temporary, it could be permanent, even if it says permanent. But what I understood the agency to be saying and you to be saying is that in finding this order here to be non-qualifying for purposes of SIJ status, what you're saying here, and I think it really is a profound point that lies at the core of this case, that it is extremely dangerous to determine basic family rights with the sloppy, skimpy proceedings that went on here. These are hugely consequential rights for the families involved, and we just can't determine basic family rights and obligations with this kind of sloppy proceeding that went on below. We wouldn't credit it in any other context, and it should be the last context of all where you're involved with the relationship of children and their parents and separating the one from the other. And that's what the agent was getting at when it said that the custody order there was insufficient. That's what the agency was getting at, and you should stand tall for that because you're really defending something basic in terms of due process and in terms of families and in terms of a great many other values that we hold dear. Well, I think the importance of those values really is reflected in the SIJ statute itself, Your Honor. I mean, that's why it has all these requirements. Yes, the statute itself reflects it. We're not importing those. The statute itself says that. Right, and when the agency applies that statute, it is honoring those values. Could I go back to Judge Wynn's question then? Yes, Your Honor. The statute itself has this requirement. So, of course, that was what was argued to and relied on in the administrative agency and also is in your brief. Is that right? Or this new, the concerns that Judge Wilkinson has told us about several times. That was the key point of your argument all along here. Your Honor, I'm not going to disclaim Judge Wilkinson's concerns. I'm not asking you to disclaim it. I'm asking you if you ever argued it. What I'm saying, Your Honor, is that we have consistently argued the same theme, that this is a major significant determination that reflects these important considerations. If I had somebody here that could read it back, do you think what you're telling me now is the same thing that Judge Wilkinson has told us three times? If you think so, fine. Then I understand why we are not meeting, we have no meeting of the minds. Understood, Your Honor. I mean, I really, I don't follow because, you know. Mr. Stewart, is it your position that a custody order has to permanently remove the parental rights in order to qualify under the statute? Because that's not, you're conflating it. First of all, have you ever practiced domestic law in a state court? I have not, Your Honor. Okay, well, I have. The point is this. No custody or support order when it comes to a child is ever permanent. Ever. Because the judge always, she has the authority always to amend it based on the circumstances. So you're equating that it has to be permanent removal of parental rights in order to meet. Is that your position? We're not arguing for a permanency requirement, Your Honor. All right. What we're arguing for is an order that makes the findings required by federal law. But Judge King read the findings. And I've said that those findings. You can't discredit those, can you? That is not, whatever the order says, it's not what North Carolina law allows. Whatever it says, it's not sufficient. The order is the order. As to the federal requirements, Your Honor. Well, until a North Carolina court says otherwise, you're telling me that court's order is not valid? Your Honor, I quoted. Until some North Carolina court says otherwise, are you saying that that court's order is not valid? Is that your argument? It's valid for the purpose for which it was. Which was custody. No, it was to enter a temporary protective order pending a final resolution of the issues following notice, Your Honor. You've never challenged that for the four or five days this order was effective, that placement of the juvenile with his brother was effective as far as North Carolina law was concerned. The issue comes in the other items that are relevant to the federal agency finding. He did have custody during those times. We agree with that, Your Honor. But that's not what the federal statute covers. That's the essence of your case, isn't it? It's part of that, but it's really a lack of an order made after the findings that you read under federal law, Your Honor. What do you mean that's covered by the statute? That's what it covers. Are you saying that's not custody under the statute because it's not permanent? Your Honor, what I'm emphasizing is the statute is very clear, Your Honor. It says, whose reunification with one or both of the immigrant's parents is not viable due to an abuse, neglect, abandonment, or a similar case found under state law. And what I'm saying is that the agency concluded, and it's clear from the number of North Carolina cases I cited, the North Carolina District Court of Appeals was not able to make that viability of reunification finding. But it did. But it did. And it made it in an order that, on the first page, in capital letters, says, order granting ex parte temporary custody. That's what it's called. It's not called a temporary protective order like you keep wanting to call it. It's temporary custody. It says that right at the top of the page. And the judge said, in paragraph five on page 129, this court determines it has jurisdiction over Felipe. He's dependent upon the court. And paragraph two, reunification with the biological parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law. It is in Felipe's best interest for temporary and permanent custody to be awarded to the plaintiff and hereby. It's ordered. Plaintiff Mateo Perez is hereby granted temporary emergency, temporary custody and control of the minor child, Felipe, who we know is his brother. That's what this order says. Well, I'm just saying that's what it says. You said it wasn't a custody order. You said that. It's not a custody order. I'm just reading it. And you told me last time around that you don't claim it's a sham. It was not a sham for the purpose it was allowed to be issued for. With respect to education, your position would overrule some at least six, eight, ten presidential decisions of the North Carolina Court of Appeals. I go to the Brody case, the Dunlop case, the treatment of temporary orders, the treatment of the limits of intellectual property. I'm just reading you what the order says. It hasn't been changed. There's not appealed. We're not an appellate court for what goes on in the district court in Mecklenburg County. Mr. Stewart, let's say we – I'm over here. I apologize, Your Honor. Let's say we disagree with you on your view of the statute. I thought I heard your colleague at the end of his argument suggest that with respect to the issue of consent, that the agency, if we sent this case back down, or, in fact, maybe he suggested that the issue of consent could no longer be litigated because you had your full and fair opportunity to litigate all of those issues the first time around, and you didn't. What's your position on that? I think my friend had it right the first time when he said the appropriate scope of remand would be to – if the court were to rule against us on Roman at 1 of the statute, would be to allow the court to address consent in the first instance of remand. And isn't that ultimately the sort of safety valve in this case? The statute seems to suggest that custody is custody irrespective of whether or not it's permanent or otherwise. But all of these other factors that you talked about, the timing, the nature of the order, the ex parte nature of the order, seem to me to be all the kinds of factors that the agency would be well within its discretion to consider on the issue of consent. I think it can consider a number of points, Your Honor. I want to be careful about pre-judging what the agency may do because I do think it's an appropriate consent function, like a discretionary function, generally something the agency – I'm not asking you to give us a final determination. I'm just asking you whether or not you think all of that might be relevant. I think the agency can consider the broader array of relevant points on remand, Your Honor. So I think you're right that remand would be warranted for exercise of the consent function. The agency felt it didn't need to get there because the case was over and the petition was done at the first prompt. Thank you, counsel. Thank you, Your Honor. Just three short points. First off, Judge Niemeyer and my opposing counsel bring up 50A-205 as the provision that talks about notice in comment or notice required before a custody order can be determined. That statute is irrelevant to this case. The statute that's relevant to this case is 50A-204B. That's the statute that the juvenile court judge cited to, and I just want to read it to make clear. If a child custody proceeding has not been or is not commenced in a court state having jurisdiction under this new format, a child custody determination made under this section implying that they can make a custody order becomes a final determination if it so provides. So the juvenile court judge in Charlotte had the authority, the ability in the proceedings to make a final determination. How do you handle all these opinions and opinions on which the federal agency relied? Opinions that say that when the court exercises emergency jurisdiction, as was the case in this order, that that is just a, regardless of how it's characterized, that that is just an emergency protective order only. And the agent, whether they've got it right, that's what they relied on, the agency did, in determining that this doesn't qualify, that because the courts are not empowered to make a final determination for all the reasons Judge Wilkinson explained, even though they may have been laid out in the arguments below, that that's inherent in all this. The point is we're, I think, we're falling into the danger of making the state determinations and reviewing the state determinations rather than reviewing the rationality of the agency that's looking at this law. And it seems to me they have a very reasoned approach on this. And if you are weighing it, you might say they have the better side of the case, but we don't have to decide that. We only have to decide whether the agency was arbitrary and capricious. And it seemed to me they have a good ground to say this original express, I mean, ex parte order that is based on the child choosing to separate from the parent, that they're going to issue such an order substantively, they didn't buy that. The agency didn't buy that. What the agency said, we agree with North Carolina's courts that this is a protective order only and that the determination has to be made in hearing with notice and due process. And it seems to me that's a reasonable position. You send that to any class in law school, they say it sounds reasonable. Now, you can come to another argument, another conclusion, which you're doing, but all you're doing is arguing the case you had argued to in a federal court in North Carolina, as opposed to a federal court reviewing the agency. So, Your Honor, I think your question raises the federalism issues here. We're applying an immigration law. And the immigration law makes a determination about how to handle people. But this is ultimately a federal question. It's not a federalism question. It's a federal law question. I completely agree with that. But NRA EXJ 662 Southeastern 2nd, 24, page 43. This court holds that the trial court had jurisdiction to enter initial custody orders based on North Carolina General Statute 58-204 emergency jurisdiction. They've got sites. I've got sites. This is not a clear issue under North Carolina law. Well, sure they have emergency orders, and none of these other cases suggested otherwise. What these other cases said is that the scope of the order is for child protection only and not the custody determination. And didn't what you just said, that you've got sites, they've got sites, that's the basis of an argument. And doesn't that almost by definition mean that it was reasonable for the agencies to go the other way? I think that that argument makes it unreasonable for them to reject outright the reason, in this case, it was the juvenile court judge who entered the order in June of 2015. That's the procedure making the decision. You're pushing us into conflict, I think, with the Fifth Circuit. And to follow up on what Judge Nimai was saying, it seems to me you're conflating state and federal law and saying that a state law decision is determinative of a federal question, which it's not. I think state law decisions are significantly against you, not for you, when you look at the North Carolina Court of Appeals. But even if we took the view that the state law decision supported you, which I don't think they do in the North Carolina Court of Appeals, the agency still has to make an independent judgment under the federal statute to resolve a federal question. And the state law may be informative and educated with respect to that federal question, but it's not controlling. And it seems to me that what the agency decides here is just what Judge Nimai was talking about. They deal with this question day in and day out. They were charged by Congress with making this determination. We can't just pretend that the agency wasn't there and that its views are not worthy of respect. It was doing what it was told to do by Congress. There's no way that it could be arbitrary and capricious to say that this isn't a qualifying order. But aren't we in conflict with the Fifth Circuit on this question? No, Your Honor. The Fifth Circuit said the statute uses the term juvenile court. We're going to interpret that. When I say statute, I mean the SIJ statute, the federal statute. This court in Texas is not a juvenile court under the federal law. And I do think it's very important, Your Honor, to see what the agency has actually said on this point. And I point you to Judge Harris' broader policy manual. And this is their overarching concern in the policy manual. It was also in a notice of proposed rulemaking. The rule never went through in 2011. It basically says our concerns about the depth of these findings is that they're only good. They have to be good until the child turns 18. After 18, no big deal. And they say USCIS generally requires the court order be valid with time filing. In month's term, the court intends the child will not reunify with at least one parent until the child reaches the age of majority. That's their concern. One question here. In a scenario, hypothesize that I agree with Judge King that the court order says what the court order says. I mean it says I find the following things. But I also were to agree hypothetically with Judge Niemeyer and others who've said, but state law says that that's not a determination under North Carolina law. That section 205 suggests that, Brody, et cetera. How would we resolve, if that was where I was, how do we resolve that conflict? You've got a family court judge saying this is what I'm doing. You've got state law saying in essence you're not doing what you're saying you're doing. Is there a story that we need to certify that to the, well, we can't certify it to North Carolina, but we're deciding to have to pick which of those is correct, the North Carolina Court of Appeals in section 205, or the family court judge who says this is what I'm doing? How do you suggest we resolve what seems to me to just be a conflict in two possible sources of law? I think we, and I see my time's up. I might continue. With the chief. Mr. Chief Judge. We'll make this the last response. Thank you. I would point you back to the final agency action. The final agency action said we don't accept this order because it's temporary. That's the question presented. But it does say citing Brody and the North Carolina law, right? So to me that doesn't, I mean, that's what, I mean, page 22, right? They talk about Brody. They talk about section 204, what that means. Accordingly, the following. So they're saying Brody in that line of cases says no. Judge King rightfully says the order says determination. And I think you avoid the perceived conflict, Judge Richardson, by answering the antecedent question here. Can an agency even require a temporary or permanent order? Because if they can't and we go to what I call the straightforward question of statutory interpretation, then we don't get there. We don't get there. This is an order, a custody order, and for the first time in two and a half years of litigation, opposing counsel has said when that order got entered, Felipe's brother had custody of him. That should be the end of this question. That is, they've admitted now that that is a custody order. They have custody of the North Carolina law. That's all Congress requires, and the agency has failed to point to unmistakably clear intent that Congress intended to limit it beyond that. Thank you all. Thank you, counsel.
judges: Gregory, Wilkinson, Niemeyer, Motz, King, Agee, Keenan, Wynn, Diaz, Floyd, Thacker, Harris, Richardson, Quattlebaum, Rushing